IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY L. FITZPATRICK and<br>NANCY L. FITZPATRICK,<br><br>    Plaintiffs,<br><br>  vs.<br><br>STATE FARM INSURANCE COMPANIES,<br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No. 09-1498<br>Chief U.S. Magistrate Judge Amy Reynolds Hay |

## MEMORANDUM OPINION

HAY, Chief Magistrate Judge

       Gregory L. Fitzpatrick ("Fitzpatrick" or "plaintiff") and Nancy L. Fitzpatrick, his wife, (collectively, "the Fitzpatricks" or "plaintiffs") bring this action against State Farm Insurance Companies and State Farm Mutual Automobile Insurance Company (collectively, "State Farm" or "defendants") seeking damages revolving around State Farm's conduct in settling the Fitzpatricks' claims for underinsured motorist benefits. In their Complaint, filed on October 19, 2009, in the Court of Common Pleas of Allegheny County, Pennsylvania, the Fitzpatricks assert four causes of action: bad faith in violation of 42 Pa. C.S.A. § 8371 (Count I); breach of contract (Count II); breach of fiduciary duty (Count III); and a claim for violating the Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201, *et seq.* ("UTPCPL") (Count IV). State Farm timely removed the case to this Court based on diversity and, on November 13, 2009, promptly filed a Motion to Dismiss [Dkt. 3] asking that Counts II, III and IV be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Because the Fitzpatricks have failed to state claim with respect to Counts III and IV, the motion will be granted in part. Although their breach of contract

claim brought at Count II survives, State Farm's motion is also granted to the extent that the Fitzpatricks seek attorney's fees in relation to the alleged breach.

**Background**

The Fitzpatricks maintained a motor vehicle insurance policy ("the Policy") with State Farm that provided for medical benefits as well as underinsured motorist ("UIM") benefits of $1,000,000 per person, stacked, covering two vehicles. Compl. ¶¶ 13-14, 16. In March of 1997 and again in March of 1998, while the Policy was in effect, Fitzpatrick was involved in two separate automobile accidents in which he was seriously injured. Id. ¶¶ 6, 10, 15. Sometime thereafter State Farm was notified of Fitzpatrick's underlying liability claims and underinsurance claims on the Policy.[1] Id. ¶ 17. Fitzpatrick settled all of the underlying liability claims between September of 2000 and February of 2001. Id. ¶ 27.

On October, 26, 2004, counsel for the Fitzpatricks notified State Farm's respective Claims Specialists of the Arbitrator he was naming in the underinsured motorist claims. Id. ¶¶ 31, 32. Over the course of the next two years State Farm sought, and received, certain documentation and information on the claims including Fitzpatrick's medical records; discovery from the underlying liability cases; Fitzpatrick's school transcripts; plaintiffs' expert reports; Fitzpatrick's tax returns from 1993 through 1999 and from 2002 through 2004; and documentation of the salaries and bonuses of similarly situated attorney's at the law firm where Fitzpatrick had been employed. As well, State Farm took Fitzpatrick's Statement Under Oath, had him undergo a psychiatric evaluation and deposed a managing partner at Fitzpatrick's law

---

[1] Although plaintiffs have alleged in the Complaint that they notified States Farm of their claims on the Policy on January 27, 1998, that date precedes the date of the second accident. Compl. ¶¶ 10, 18.

firm. Id. ¶¶ 35-48.

On November 14, 2006, the Fitzpatricks made a demand of $1,750,000.00 to settle the claims. Id. ¶ 49. After several months of negotiations and counter-offers, the Fitzparticks agreed to settle their claims for $915,000.00, which was paid by State Farm on May 25, 2007. Id. 50-57. The Fitzpatricks allege, however, that State Farm failed to fairly, objectively or diligently evaluate and settle their claims and by failing to act in good faith by, amongst other things, prolonging the process and making offers substantially less than the full value of their claims.

**Standard of Review**

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (Finding that, under

Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice; noting that the complaint "must allege facts suggestive of [the proscribed] conduct;" and requiring plaintiff to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**Discussion**

      **A.     Breach of Contract**

State Farm first argues that the Fitzpatricks are unable to succeed on a claim for breach of contract because it has already tendered the proceeds of the Policy to them.

A plaintiff asserting a breach of contract claim under Pennsylvania law must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Pennsy Supply, Inc. v. American Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. 2006). Generally, a breach of contract claim cannot be sustained where the proceeds of the policy have been paid since, if the plaintiff has received everything due under the policy, there are no damages. Amitia v. Nationwide Mut. Ins. Co., 2009 WL 111578 at *3 (M.D. Pa. Jan. 15, 2009).

The Restatement (Second) of Contracts § 205, however, provides that "[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." Although the Pennsylvania Supreme Court has not formally adopted the Restatement in this regard, it has nevertheless suggested that parties to a contract have a duty to act in good faith and that their failure to do so constitutes a breach of contract. Birth Center v. St. Paul Companies, Inc., 567 Pa. 386, 399, 787 A.2d 376, 385 (2001), quoting Gray v. Nationwide Mut. Ins. Co., 422 Pa. 500, 508, 223 A.2d 8, 11 (1966) ("Breach of [the] obligation

[to act in good faith] constitutes a breach of the insurance contract for which an action in assumpsit will lie"). See Ash v. Cont'l Ins. Co., 593 Pa. 523, 533 n.2, 932 A.2d 877, 833 n.2 (2007) (Recognizing that the Superior Court and some members of the Supreme Court have in some cases suggested that the Restatement has been adopted in Pennsylvania). See also Zaloga v. Provident Life and Accidental Ins. Co., 671 F. Supp. 2d 623, 629-30 (M.D. Pa. 2009) (Predicting that "the Supreme Court of Pennsylvania would adopt § 205 – and impart a contractual obligation of good faith and fair dealing to all contracts – if it were squarely presented with the issue").

Moreover, the Pennsylvania Supreme Court has found that even where payment has been made to an insured under an insurance policy, he or she may nevertheless have a cause of action for breach of contract against the insurer where he or she has suffered other damages because of the insurer's bad faith conduct in handling the claim. In Birth Center v. St. Paul Companies, Inc., 567 Pa. 386, 787 A.2d 376, for instance, the insurance company refused to make a good faith effort to settle a case brought against its insured despite offers by the plaintiffs to settle the case within the policy limits. The case proceeded to trial resulting in a verdict against the insured in excess of those limits. Id., 567 Pa. At 393, 787 A.2d at 381. Although the insurance company ultimately paid the excess verdict, the insured subsequently brought suit against the insurance company bringing claims for, inter alia, breaching its implied covenant of good faith as well as Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371. Id. The insurance company argued, much as State Farm has here, that its payment of the excess verdict precluded the plaintiff's bad faith claims. The Court, however, rejected that argument finding that "there is no reason to limit damages to the amount of the verdict where the insured can show that the

insurer's bad faith conduct caused it additional damages." Id., 567 Pa. at 400, 787 A.2d at 385. The Court went on to explain that "[w]here ... the insured can prove that it sustained damages in excess of the verdict, the insurer's payment of the excess has little to do with the insured's damages. Accordingly, the insurer's payment of the excess should not free it from other known or foreseeable damages it has caused its insured to incur." Id. See Amitia v. Nationwide Mut. Ins. Co., 2009 WL 111578, at *3 (Declining to dismiss the plaintiff's breach of contract claim despite the fact that benefits under the insurance contract had been paid where the plaintiff sought compensation for the emotional distress that the delayed payment caused). See also Aquila v. Nationwide Mut. Ins. Co., 2008 WL 5348137, at *5 (E.D. Pa. Dec. 15, 2008), quoting Cowden v. Aetna Cas. & Sur. Co., 389 Pa. 459, 468, 134 A.2d 223, 227 (Pa. 1959) ("This common law obligation [to act in good faith] can be traced back at least as far as 1959, when the Pennsylvania Supreme Court decided in Cowden v. Aetna Casualty & Surety Co. that the 'greatly preponderant weight of authority in this country' provided an insured with a cause of action if the insurer's 'handling of the claim ... was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty'").

Here, like in Birth Center, the Fitzpatricks' breach of contract claim is not based on State Farm's failure to pay them the proceeds of the Policy nor do they seek the insurance proceeds. Rather, the Fitzpatricks' claim is premised on State Farm's contractual duty to act in good faith in handling their claim. They have alleged in the Complaint that State Farm breached that duty in a myriad of ways including unfairly evaluating their claims; being dilatory and failing to effectuate a prompt and equitable settlement of their claims; offering substantially less than the full value of their claims; and delaying payment of the claims. Compl. ¶¶ 62, 72. The

Fitzpatricks seek interest on the claim or monies they allegedly would have had available to them if State Farm had complied with its duty to act in good faith and promptly settled the claim. Because the Fitzpatricks have alleged damages stemming from State Farm's performance of its duty under the Policy over and above payment of the proceeds, they have properly stated a claim for breach of contract.

State Farm also argues that even if the Fitzpatricks' breach of contract claim is not dismissed in its entirety, they are not entitled to attorney's fees for a breach of an insurance contract and that their request for attorney fees in Count II should therefore be dismissed. The Court agrees.

As pointed out by State Farm, attorney's fees are recoverable under Pennsylvania law only if there is statutory authority, a clear agreement between the parties that provides for such an award or some other established exception. Knecht, Inc. v. United Pacific Ins. Co., 860 F.2d 74, 80 (3d Cir. 1988); Snyder v. Snyder, 533 Pa. 203, 212, 620 A.2d 1133, 1138 (1993). Here, the Policy entered into between the parties does not provide for attorney's fees and there does not appear to be any statutory authority for the recovery of attorney's fees for breach of an insurance contract. Nor have the Fitzpatricks pointed to some other established exception which would entitled them to attorney's fees. Indeed, the Fitzpatricks have not addressed State Farm's argument in this regard at all and, thus, have seemingly conceded the issue. Accordingly, they are not entitled to recover such fees at Count II and that portion of their breach of contract claim is properly dismissed.

### B. Breach of Fiduciary Duty

With respect to Count III, State Farm argues that the Fitzpatricks cannot assert a

7

claim for breach of fiduciary duty under the facts alleged in the Complaint as a matter of law. Specifically, State Farm argues that, under Pennsylvania law, a life insurance company only has a fiduciary duty to an insured when a third party has asserted a claim against him or her.

Indeed, the Court of Appeals for the third Circuit has found that "[u]nder Pennsylvania law, a fiduciary duty higher than the duty of good faith and fair dealing does not arise out an insurance contract until an insurer asserts a stated right under the policy to handle all claims asserted against the insured." Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 227-28 (3d Cir. 2000), citing Gedeon v. State Farm Mut. Auto. Ins. Co., 410 Pa. 55, 60, 188 A.2d 320, 322 (1963), and Lee R. Russ & Thomas F. Segalia, 3 Couch on Insurance § 40.7 (3d ed.1995). See Ross v. Metro. Life Ins. Co. 411 F. Supp. 2d 571, 583 (W.D. Pa. 2006), quoting Connecticut Indem. Co. v. Markman, 1993 WL 304056, at *5 (E.D. Pa. Aug. 6, 1993) ("Under Pennsylvania law, '[t]he mere fact that an insurer and an insured enter into an insurance contract does not automatically create a fiduciary relationship.'... Pennsylvania courts and federal courts interpreting Pennsylvania law have found that insurers assume fiduciary relationships with their insureds when an insurer asserts a stated right under a policy to handle all claims against its insured"). Thus, an insurer assumes a fiduciary duty toward an insured only when a third party has asserted a claim against the insured. See Birth Center v. St. Paul Ins. Co., 727 A.2d 1144, 1155 (Pa. Super. 1999), aff'd, 567 Pa. 386, 787 A.2d 376 (2001).

Because the instant case revolves around the Fitzpatricks' claims for UIM benefits under the Policy and does not involve claims by a third party, State Farm did not assume a fiduciary duty toward the Fitzpatricks. Since no duty was owed, it follows that State Farm could not have breached that duty and the Fitzpatricks' claim for breach of fiduciary duty must fail as a

matter of law. See Zappile v. Amex Assurance Co., 928 A.2d 251, 256 (Pa. Super. 2007) (Rejecting the notion that there is some form of heightened duty to a "first party" claimant as opposed to a third party adversarial claimant, finding that a UIM claim is "inherently and unavoidably adversarial" and that the duty of an insurer is one of good faith and fair dealing); Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1145 (Pa. Super. 2006) (Noting the similarities between UIM claims and third party claims, the Court held that "when faced with a U-claim, an insurance company's duty to its insured is one of good faith and fair dealing.... Erie did not have a heightened duty toward the Estate."). See also Ross v. Metro. Life Ins. Co., 411 F. Supp.2d at 583 (Dismissing breach of fiduciary claim as duplicative of breach of contract claim based on good faith and fair dealing).

### C.     Violation of the UTPCPL

State Farm also contends that the Fitzpatricks' claim brought at Count IV under the UTPCPL should be dismissed because the UTPCPL only applies to actions taken in "trade or commerce," which is defined under the statute as "the advertising, offering for sale, sale or distribution of any services and any property . . . ." 73 P.S. § 201-2. Because the Fitzpatricks' claim revolves around State Farm's nonfeasance or its handling of their claim, rather than a commercial transaction, State Farm argues it is not actionable under the UTPCPL and is properly dismissed. The Fitzpatricks concede as much but argue that they have also alleged in the Complaint that State Farm made misrepresentations in selling them the Policy and, thus, have stated a claim under the UTPCPL.

Notwithstanding the fact that the Fitzpatricks themselves have categorized their case as one "based on the conduct of the defendants in *settling* plaintiffs' claim for underinsured

9

motorist benefits," they have alleged in paragraph 81 of the 82 paragraph Complaint that State Farm misrepresented "the nature, extent, terms and conditions of the insurance coverage for which Plaintiff's were paying premiums ... and that it would promptly evaluate and respond to all reasonably underinsured claims made by Plaintiffs." Compl. ¶¶ 81(a), (b). See Pl. Brief, p. 1. Although these allegations suggest that State Farm made misrepresentations in order to sell the Fitzpatricks the Policy thereby implicating a commercial transaction, they fall short of stating a claim under the UTPCPL.

Indeed, the Pennsylvania Supreme Court has held that in order to recover under the UTPCPL, a plaintiff must establish the elements of common law fraud. See Toy v. Metro. Life Ins. Co., 593 Pa. 20, 46, 928 A.2d 186, 202 (2007). See also Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005) ("[W]e must conclude that every plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct"). Under Pennsylvania law, fraud will be found where the plaintiff has established:

> (1) a representation;
> (2) which is material to the transaction at hand;
> (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
> (4) with the intent of misleading another into relying on it;
> (5) justifiable reliance on the misrepresentation; and
> (6) the resulting injury was proximately caused by the reliance.

Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 545 (Pa. Super. 2005). Moreover, under Federal Rule of Civil Procedure 9(b), which states: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," claims of fraud are subject to a heightened pleading standard. McCracken v. Ford Motor Co., 588 F. Supp. 2d

635, 644 (E.D. Pa. 2008). Although some courts have interpreted this rule as requiring the plaintiff to "at a minimum, state the time, place and content of the false misrepresentation, the fact misrepresented and what was obtained or given up as a consequence of the fraud," Tredennick v. Bone, 647 F. Supp. 2d 495, 500-01 (W.D. Pa. 2007), aff'd, 323 Fed. Appx. 103 (3d Cir. 2008); DuSesoi v. United Refining Co., 540 F. Supp. 1260, 1272 (W.D. Pa. 1982); Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d at 545, the Court of Appeals for the Third Circuit has interpreted the rule more liberally finding that allegations of "date, place or time" are not required to satisfy the rule and that "the requirement is satisfied as long as the defendants have been placed on notice "of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). See In re Docteroff, 133 F.3d 210, 217 (3d Cir. 1997) ("The purpose of the rule is to allow a defendant to meaningfully respond to the complaint"). The Court of Appeals nevertheless does require that the nature and subject of the alleged misrepresentation be adequately described and that "some measure of substantiation" be included. Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d at 791. See Hartman v. Canada Life Assurance Co., 1988 WL 120743, at 3 (E.D. Pa. Nov. 4, 1988) (Finding that under Seville, "[a]lthough date, time and place are not required, at least who said what to whom is"). This, of course, also comports with the United State Supreme Court's requirement that to survive a motion to dismiss a plaintiff must allege enough facts to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

    Here, the Fitzpatricks have not alleged any facts to support their claim or provided any measure of substantiation whatsoever. Indeed, they have not stated what the alleged

11

misrepresentations were, when they were made or by whom. Nor have they alleged how the alleged misstatement were relied upon or how they proximately caused any harm. As such, the Fitzpatricks have failed to state a claim under the UTPCPL and Count IV of the Complaint is properly dismissed as well.

**Conclusion**

For the reasons set forth above, State Farm's Motion to Dismiss [Dkt. 3] is GRANTED as to Counts III and IV, and to the extent the Fitzpatricks seek attorney's fees at Count II, and DENIED in all other respects.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 24 May, 2010

cc: All counsel of record by Notice of Electronic Filing